IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY WIMBERLY, # N-61282, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-976-JPG |
| ) | |
| LT SCHULLER, JEFFREY B. JULIUS, ) | |
| ALLEN APARACIO, ) | |
| MICHAEL E. SANDERS, ) | |
| and ANGELA K. WINSER, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Shawnee Correctional Center ("Shawnee"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  His claims arose out of an altercation Plaintiff had with his cellmate while he was confined at Big Muddy River Correctional Center ("BMRCC").  Plaintiff is serving sentences of 44 years and 18 years for two armed robbery convictions.

On July 6, 2012, Plaintiff and his cellmate (Bates) got into a physical fight in their cell (Doc. 1, p. 5).  At some point, Bates grabbed Plaintiff's fan and started using it as a weapon to beat Plaintiff about the head and face.  Plaintiff's injuries were serious enough to require a trip to an outside hospital and 25 stitches.  He now has several scars, and suffers from ongoing pain and blurred vision.

Both Plaintiff and his cellmate were charged with disciplinary infractions.  Plaintiff was found guilty and given one month of disciplinary segregation (Doc. 1, p. 10).  Cellmate Bates was apparently also found guilty, and was transferred to another prison (Doc. 1, p. 6).  Plaintiff

also was eventually transferred.

Plaintiff's chief complaints are that the adjustment committee that conducted his disciplinary hearing violated prison rules by recommending his transfer, and that officials were too lenient in filing charges against Bates (Doc. 1, pp. 5-6).  He argues that Bates should have been charged with a dangerous assault or attempted murder.  The failure of Defendants to bring such a charge or to fully investigate the matter resulted in the "cover up" of a crime.  Further, Plaintiff was not given the opportunity to press charges against Bates.

Plaintiff wants corrective surgery, and requests compensatory and punitive damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

After fully considering the allegations in Plaintiff's complaint, the Court concludes that this action is subject to summary dismissal.

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety.  *Farmer,* 511 U.S. at 834.  In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger.  *Id.*; *Pinkston*, 440 F.3d at 889.  A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his

safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, for liability to attach, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

In Plaintiff's case, he does not assert that he asked Defendants for protection from his cellmate at any time before the incident, nor does he indicate that he was threatened or warned of a possible attack before it happened. From Plaintiff's description, Bates' attack on him with the fan was completely unforeseen. In such a situation of random violence, prison officials cannot be said to have ignored a known risk to the victimized plaintiff. Therefore, there was no constitutional violation, and Plaintiff cannot maintain a civil rights claim for failure to protect him from his cellmate's surprise attack.

Plaintiff's theory that Defendants should owe him damages because they failed to charge his attacker with a sufficiently serious prison disciplinary action simply has no legal support. A decision on whether or not to bring prison disciplinary charges against an inmate, and indeed what charges to bring, is within the discretion of prison officials. Plaintiff has no constitutional right to demand disciplinary action against another inmate, nor any right to damages based on the Defendants' actions or failure to act in accordance with his wishes. Likewise, Plaintiff has no right to "press charges" against Bates – discretion as to whether to prosecute any person for a criminal offense rests with the State's Attorney for the county where the conduct occurred. Despite Plaintiff's accusation that Defendants engaged in a "cover-up," no constitutional

violation occurred in their handling of this matter.

Finally, Plaintiff has no claim against Defendants for recommending his transfer, or for ultimately moving him to another prison.  "[P]risoners possess neither liberty nor property in their classifications and prison assignments.  States may move their charges to any prison in the system."  *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)).  *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison).  Thus, even if Plaintiff was transferred as a result of the disciplinary action against him, that action did not violate his constitutional rights.

In summary, this action shall be dismissed with prejudice.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 4) is **DENIED AS MOOT.**

**Disposition**

For the reasons stated above, this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal.  *See* FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal, he will be liable for the $455.00

appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: October 18, 2013**

*s/ J. Phil Gilbert*
United States District Judge
